# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Originally Filed: May 9, 2022
Refiled in Redacted Form: June 27, 2022

```
* * * * * * * * * * * * * * *
```
STEPHANIE ROSCOE, as        *       PUBLISHED
Representative of the Estate of   *
B.R., deceased,             *       No. 11-206V
                            *
            Petitioner,     *       Special Master Nora Beth Dorsey
v.                          *
                            *
SECRETARY OF HEALTH         *       Ruling on Set-Off of Petitioner's Settlement
AND HUMAN SERVICES,         *       of Civil Action in State Court; Vaccine Act
                            *       § 15; Release of All Claims.
            Respondent.     *
                            *
```
* * * * * * * * * * * * * * *
```

<u>Richard Gage</u>, Richard Gage, P.C., Cheyenne, WY, for petitioner.
<u>Kyle Edward Pozza</u>, U.S. Department of Justice, Washington, DC, for respondent.

## RULING ON SET-OFF[1]

## I.      INTRODUCTION

On April 4, 2011, Stephanie Roscoe ("petitioner"), as representative of the estate of B.R., deceased, filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 <u>et seq.</u> (2012).[2] Petitioner alleged that as a result of receiving hepatitis A, tetanus-diphtheria-acellular pertussis ("Tdap"), meningococcal

---

[1] Because this Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2012). All citations in this Ruling to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

conjugate ("Menactra"), and human papillomavirus ("HPV") vaccines administered to B.R. on March 31, 2009, B.R. suffered fever, leg and bodily pain, emotional and mental confusion and anguish, and death. Petition at 1 (ECF No. 1). An entitlement hearing was held on January 8, 2020, after which petitioner was found entitled to compensation on June 8, 2020. Ruling on Entitlement dated June 8, 2020 (ECF No. 183).

During the pendency of her vaccine petition in this Court, petitioner executed a "Settlement Agreement and Limited Release of Claims" (hereinafter the "Settlement Agreement") with certain defendants, parties to a civil action filed in the State Court of [. . .], for alleged negligent acts or omissions resulting in the personal injury and death of B.R.[3]  Resp. Exhibit ("Ex.") DD at 1. At issue here is whether petitioner's vaccine award should be offset by the settlement money paid by an insurance policy on behalf of the defendants named in that action. For the reasons discussed below, the undersigned finds that the Vaccine Act is a secondary payer as to any insurance policy that made payments as set forth in the Settlement Agreement and thus, petitioner's award of compensation for her pending Vaccine Act claim is subject to a set-off.

## II.   PROCEDURAL HISTORY

Petitioner filed her petition on April 4, 2011, alleging that as a result of receiving hepatitis A, Tdap, Menactra, and HPV vaccines administered to B.R. on March 31, 2009, B.R. suffered fever, leg and bodily pain, emotional and mental confusion and anguish, and death. Petition at 1. The early procedural history from April 2011 through March 2020 was set forth in

---

[3] For an explanation of the procedural history relative the petitioner's pending civil action, see Ruling on Entitlement at 3. Briefly, petitioner filed a Complaint in the State Court of [. . .], on April 1, 2011, against a number of individually named physicians, their employers, and [. . .] for [. . .]. Response to Court Order, filed July 18, 2014, at 2-20 (ECF No. 49). Petitioner also filed an amended complaint, which included affidavits of [. . .] and [. . .], setting forth alleged negligent acts committed by the physicians and nursing staff at [. . .]. Id. at 21-36. The individual defendants were subsequently dismissed. Neither the complaint or the amended complaint stated any allegations based on the vaccines, against the person who administered the vaccines, or the manufactures of the vaccines.

On July 21, 2014, the special master presiding over the case issued an Order to Show Cause why the case should not be dismissed because the petitioner had a pending civil action when she filed her petition in this Court. Order dated Sept. 25, 2014, at 3 (ECF No. 54). The issue was briefed, and the parties agreed that the controlling case was Schumacher v. Secretary of Health & Human Services, 2 F.3d 1128 (Fed. Cir. 1993). Id. (citing Pet. Brief in Support of Mutual Agreed upon Stipulation Approval and Opposition to Dismissal, filed Aug. 22, 2014, at 3-4 (ECF No. 52); Resp. Reply to Pet. Response to the Order to Show Cause and Motion to Strike, filed Sept. 25, 2014, at 4 (ECF No. 53)). In Schumacher, the Federal Circuit held that the Vaccine Act does not bar a petitioner from filing a vaccine petition when her pending civil action is not against a vaccine manufacturer or vaccine administrator. Id.; Schumacher, 2 F.3d at 1133. Thus, the special master issued an order in which she ruled that the Vaccine Act did not require dismissal of the petition in this Court. Order dated Sept. 25, 2014, at 3.

the undersigned's Ruling on Entitlement and will not be repeated here.  See Ruling on Entitlement at 2-5.  Since the Ruling on Entitlement issued, the parties have been discussing damages, specifically the issues surrounding petitioner's settlement in a [. . .] civil action.

In a status conference held on December 3, 2020, the undersigned determined that the facts and law presented here required production of petitioner's settlement agreement from her [. . .] state civil action.  Order dated Dec. 3, 2020 (ECF No. 197).  Given the confidential nature of the settlement agreement, respondent was directed to subpoena petitioner's attorney on the civil action and file the settlement agreement.  Id. at 2-3.

On March 8, 2021, respondent filed a redacted version of the Settlement Agreement from petitioner's [. . .] civil action.  Resp. Ex. CC.  Specifically, the amounts paid under the agreement were redacted.  See id.  Thereafter, the parties filed a joint status report indicating that they disagreed about whether the redacted information was relevant.  Joint Status Rept., filed Apr. 7, 2021 (ECF No. 204).  The undersigned held a status conference on May 4, 2021, where she provided her ruling as to the issue of redaction of payments.  Order dated May 4, 2021 (ECF No. 205).  After both parties were afforded the opportunity to state their positions, the undersigned found the redacted information was relevant for purposes of determining the amount of damages in this matter.  Id. at 1-2.  Further, the parties disagreed about whether a set-off was appropriate.  Id.  The parties agreed to brief the issue of set-off once the non-redacted settlement agreement was filed.  Id. at 2.

Respondent filed the non-redacted Settlement Agreement on December 22, 2021.  Resp. Ex. DD.  On March 16, 2022, respondent filed his brief on damages and offset, arguing "the award set forth in the Settlement Agreement from the civil action is an offset to pain and suffering, the death benefit, and any claimed out of pocket expenses in this matter."  Resp. Brief on Damages and Offset ("Resp. Br."), filed Mar. 16, 2022, at 8 (ECF No. 232).  Petitioner filed her response on April 15, 2022.  Plaintiff's Response to Resp. Br. ("Pet. Br."), filed Apr. 15, 2022 (ECF No. 233).

This matter is now ripe for adjudication.

## III.   BACKGROUND

### A.   Brief Factual Summary

On March 31, 2009, B.R. presented to her pediatrician's office for her 11-year well-child visit.  Pet. Ex. 14 at 3.  B.R. received the Hep A and HPV vaccines in her upper right arm and the Tdap and Menactra vaccines in her upper left arm.  Id. at 4.

On the following day, April 1, 2009, at 5:45 PM, B.R. was admitted to [. . .] Emergency Department ("ED") with complaints of hip pain and fever.  Pet. Ex. 14 at 10.  She was noted to have been febrile with poor oral intake.  Id.  B.R.'s pain began at 3:30 AM, and was described as "affecting [her] left iliac crest and pelvis."  Id. at 11.  B.R. had no history of cough, sore throat, runny nose, or ear pain.  Id.  Prior to her arrival, she had "been playful and normally active."  Id.  She did have history of fever for the last few hours, with a maximum temperature of 102 to 103,

without chills or sweats.  Id.  She had no nausea, vomiting, or diarrhea.  Id.

B.R. was discharged from the ED at 8:47 PM.  Pet. Ex. 14 at 14.  Her temperature at the time of discharge remained abnormal and her mother was advised to follow-up with her pediatrician if B.R.'s symptoms worsened.  Id.  B.R.'s pain at the time of discharge was 2/10.  Id.

At 8:04 AM on April 3, 2009, B.R. was taken by her parents to the [. . .] Emergency Room ("ER") for fever and pain in the left thigh, with nausea and vomiting, and a rash.  Pet. Ex. 14 at 120.  An "Emergency Room Patient Sign-in Sheet Patient Information" form was completed and stated that B.R. had a "[h]igh fever since Tues[day].  Extreme upper thigh pain.  She had 4 vaccines on Tues[day].  Gagging Dehydrated."  Id. at 133.  On the form's list of signs and symptoms, B.R. was noted to have fever and fatigue.  Id.  She did not have a cough, shortness of breath, or close contact with a person who had respiratory symptoms.  Id.

B.R. was transported from [. . .] to [. . .] by ambulance on April 3, 2009.  Pet. Ex. 14 at 35.  The ambulance trip report states B.R. "is being transferred . . . for follow up care . . . for a possible allergic reaction to immunizations administered on 03/31/2009," and "[B.R.] [complains of] left hip pain," which she describes "as sharp and non radiating" and "[r]ates pain as 10 on 1-10 scale."  Id.

At 11:10 PM, April 3, 2009, the nursing staff received a call from [. . .] reporting that the blood cultures drawn earlier were positive, showing gram positive cocci in chains.  Pet. Ex. 14 at 57, 71.  An antibiotic, ceftriaxone, was ordered.  Id. at 57, 71.  B.R. progressively worsened and despite lengthy resuscitative efforts, she died at 12:27 PM on April 4, 2009.  Id. at 70, 81, 112-13.

### B.    Vaccine Act Petition

This petition was filed on April 4, 2011 by Frederick Parks and Stephanie Roscoe as legal representatives of their minor child, B.R., "for the injury and death of [B.R.]."  Petition at 1.  Specifically, they alleged B.R. received hepatitis A, Tdap, Menactra, and HPV vaccines on March 31, 2009, and thereafter B.R. "suffered fever, uncontrollable crying, leg and other bodily pains, emotion and mental confusion and anguish[,] as well as ultimately suffering death four days later, which was 'caused-in-fact' by the above-stated vaccination[s]."  Id.  Mr. Parks and Ms. Roscoe indicated that they "made [an] application to be appointed their daughter's legal representatives by the State of [. . .]."  Id. at 2.  The petitioners, Mr. Parks and Ms. Roscoe, reported they, nor B.R., "ever received compensation in the form of an award or settlement for [B.R.'s] vaccine-related injuries or death" nor "filed a civil action against vaccine manufacturers or distributors for [B.R.'s] injuries and death prior to filing their Petition."  Id. at 3.  Additionally, medical and funeral bills were outstanding.  Id.

After the petition was filed, petitioner filed letters of administration, indicating that Stephanie Roscoe was appointed administrator of the estate of B.R., along with a motion to amend the case caption to "Stephanie Roscoe, as representative of the estate of B.R., deceased," which was granted.  Pet. Ex. 45 at 1; Order dated Jan. 3, 2020 (ECF No. 171).

4

### C.  Relevant Portions of the Civil Action Complaint and Settlement Agreement

Petitioner's State Court civil action was brought by Stephanie Roscoe and Frederick Parks (plaintiffs) as the parents of and administrators of the estate of their deceased daughter, B.R. Response to Court Order ("Complaint"), filed July 18, 2014, at 3 (ECF No. 49). Ms. Roscoe and Mr. Parks sued seven defendants, alleging medical negligence and wrongful death of B.R. Id. In the Complaint, the ad damnum clause requested "[t]hat they recover on behalf of [B.R.'s] estate for her injuries and damages" and "[t]hat they recover the full value of [B.R.'s] life under the wrongful death statute." Id. at 3, 17.

The plaintiffs and certain named defendants to that civil action entered into a Settlement Agreement. Under the terms of the Settlement Agreement, Ms. Roscoe and Mr. Parks, as the parents of and administrators of the estate of their deceased daughter, B.R., were identified as the "Releasors." Resp. Ex. DD at 1. The "Releasees" were the remaining defendants in the civil action. Id.

The "recitals" in the Settlement Agreement provided the "Complaint arose out of certain alleged negligent acts or omissions by Releasees and the other named Defendants (hereinafter "the Incident"), and which [Releasors] allege caused the death of [B.R.]." Resp. Ex. DD at 1.

Additionally, the Releasors agreed to

> completely release and forever discharge Releasees, from any and all past, present[,] and future claims, demands, obligations, actions, causes of action, suits at law or equity, rights, damages, costs, losses, loss of services, or expenses and compensation of any nature whatsoever, whether based on a tort, contract[,] or other theory of recovery, which Releasors now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint including, without limitation, any and all known or unknown, claims, injuries to person, property and/or reputation, wrongful death, pain and suffering, mental and/or emotional anguish, punitive damages, medical, hospital, and/or other expenses of any kind whatsoever, loss of wages, loss of income and/or compensation, loss of consortium or services of whatsoever kind in nature, and/or other claims for monetary relief against Releasees.

Resp. Ex. DD at 2-3.

The "recitals" identified [. . .] and [. . .] "as the primary liability insurers of the Releasees for the incident in question." Resp. Ex. DD at 1. With regard to payment under the Settlement Agreement, the amount agreed to was made payable as follows: "the Insurers on behalf of the Releasees agree[d] to pay the Releasors . . . $[. . .] payable to Stephanie Michelle Roscoe and Frederick Parks, as Parents and Natural Guardians of [B.R.], and as Administrator of the Estate of [B.R.] (Stephanie Michelle Roscoe), and [. . .], their attorneys." Id. at 6-7. The agreement did not identify the specific insurance policy or policies which made the settlement payments. Additionally, the agreement did not describe whether any of the settlement payment was made

by a self-insured entity, or pursuant to any other arrangement other than an insurance policy.

In addition to the payment of $[. . .], the insurers also agreed to pay a total of $[. . .] to purchase structured settlements to fund a "stream of future periodic payments" for both Ms. Roscoe ($[. . .]) and Mr. Parks ($[. . .]).[4]  Resp. Ex. DD at 7.  Thus, the total amount paid under the Settlement Agreement was $[. . .].  Id. at 6-7.

The "Releasors" also represented that one or both of them were "duly appointed administrator(s) of the estate of [B.R.], and that no other person or entity ha[d] been so appointed."  Resp. Ex. DD at 8.  Petitioner, Stephanie Michelle Roscoe, signed the Settlement Agreement "Individually, and as Parent and Natural Guardian of [B.R.], deceased, and as the Administrator of the Estate of [B.R.], deceased."  Id. at 11.

## IV.   PARTIES' CONTENTIONS

### A.   Petitioner's Contentions

Petitioner contends the estate of B.R. did not receive money from the Settlement Agreement and that "[t]here is no legal authority supporting offsetting Vaccine Program damages with funds from two people who are not, nor ever could be parties to this action."  Pet. Br. at 1-3.

Petitioner argues respondent ignores the distinction between three separate entities: the father of B.R., the mother of B.R., and the estate of B.R.  Pet. Br. at 1.  The [. . .] civil action was brought by all three entities, but each "brought separate and distinct causes of action," although the settlement agreement does not indicate which party received money for which causes of action.  Id.  Petitioner maintains that "as a matter of fact, [] the estate received no money," which was confirmed by the estate attorney.  Id. at 1-2 (citing Pet. Ex. 48).  Thus, the money received from the Settlement Agreement went to B.R.'s father and mother, in their individual capacities. Id. at 2.

Because the only party to the Vaccine Act action is the estate of B.R., and no money from the Settlement Agreement was awarded to the estate of B.R., petitioner argues there should be no set off.  Pet. Br. at 1-3.  Petitioner explains that the estate of B.R. "settled its cause(s) of action without receiving any money.  All money from the settlement went to [B.R.'s] parents, in their individual capacity."  Id. at 3.  Therefore, petitioner argues the money received from the Settlement Agreement was awarded to "legally distinct non-parties [and] cannot be used to offset damages owed to B.R.'s Estate under the Vaccine Act."  Id.

Petitioner explained that only the estate could bring this instant action, and cited to the Vaccine Act and cases for support.  Pet. Br. at 2-3.  Section 11(b)(1)(A) states that in the case of a death, the petitioner must be "the legal representative of [that] person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table."  § 11(b)(1)(A).  Additionally, § 15(d)(2) provides that "[c]ompensation awarded under the Program may not include . . .

---

[4] Respondent does not argue that the money paid for these annuities is subject to the setoff.  See Resp. Br. at 4-8.

compensation for other than the health, education, or welfare of the person who suffered the vaccine-related injury with respect to which the compensation is paid." § 15(d)(2). Thus, "parents of an injured child are not permitted to file a petition except in a representative capacity." Pet. Br. at 2-3 (quoting, e.g., Bertrand v. Aventis Pasteur Laboratories, Inc., 226 F. Supp. 2d 1206, 1214 (D. Ariz. 2002)). Petitioner acknowledges that "B.R.'s [parents] have no right to seek damages under the Vaccine Act" because "the Act does not provide for compensation for the parents of an injured or deceased vaccine recipient in their individual capacities." Id. (quoting Vire v. Sec'y of Health & Hum. Servs., 1990 WL 541739, at *1 n.2 (Cl. Ct. 1990)).

Petitioner concludes by asserting that no payment has been made to B.R.'s estate that could count as an offset, and as such, "[t]he Estate of B.R. is statutorily entitled to damages under the Vaccine Act." Pet. Br. at 3.

### B. Respondent's Contentions

Respondent contends that § 15(g) of the Vaccine Act, as well as case law, illustrates that the Vaccine Program is a secondary payer to payments made by an insurance policy. Resp. Br. at 4. Respondent argues that the money petitioner received by petitioner as the administrator of B.R.'s estate in the Settlement Agreement constitutes payment under a hospital liability insurance policy, and thus, is a set-off under § 15(g). Id. at 4-8.

First, respondent contends the plain language of § 15(g) of the Vaccine Act "reflects that the Program is a secondary payer to any insurance policy." Resp. Br. at 6 (quoting Helman v. Sec'y of Health & Hum. Servs., No. 10-813V, 2014 WL 3589564, at *2 (Fed. Cl. Spec. Mstr. June 24, 2014)); see also Schettl v. Sec'y of Health & Hum. Servs., No. 14-422V, 2019 WL 1446416, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 6, 2019) (finding the Vaccine Program to be a secondary payer to petitioner's vaccine administrator's insurance policy).

Next, respondent notes the undersigned's Ruling on Entitlement found "petitioner provided preponderant evidence that one or more of the vaccines B.R. received caused her to develop a *Streptococcus pyogenes* infection that caused her death," and argues that the payment received from the insurers under the Settlement Agreement was for B.R.'s pain and suffering and death, resulting from the same incident, and thus, a sequela of B.R.'s vaccine injury. Resp. Br. at 7 (quoting Ruling on Entitlement at 2). For support, respondent cited to Aull v. Secretary of Health & Human Services, 462 F.3d 1338 (Fed. Cir. 2006), which found "post-vaccination medical malpractice in the treatment of a condition that was caused by a vaccination is 'vaccine-related.'" Id.

Respondent argues that petitioner "filed a state court action against medical providers for their post-vaccination treatment of B.R." Resp. Br. at 8. And, "[p]etitioner as administrator of the estate of B.R., received a settlement from insurance policies to release claims including pain and suffering and wrongful death." Id. Based on the facts of the case and because § 15(g) of the Vaccine Act states that "[p]ayment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, . . . with respect to such item or service . . . under an insurance policy," respondent asserts that "the $[. . .] in the Settlement Agreement, payable to the administrator of the estate of B.R. for her pain and suffering and wrongful death, is

an offset to the damages award in this case." Id.

## V.   VACCINE ACT AND LEGAL STANDARDS

### A.   Legal Representative

According to the Vaccine Act, a petitioner is

> any person who has sustained a vaccine-related injury, the legal representative of
> such person if such person is a minor or is disabled, or the legal representative of
> any person who died as the result of the administration of a vaccine set forth in
> the Vaccine Injury Table may, if the person meets the requirements of subsection
> (c)(1), file a petition for compensation under the Program.

§ 11(b)(1)(A).

### B.   Vaccine Act Damages and Secondary Payor Provisions

Pursuant to § 15(a) of the Vaccine Act, a petitioner entitled to an award of compensation
may recover past and future unreimbursed expenses, "an award of $250,000 for the estate of the
deceased" in "a vaccine-related death," actual and anticipated loss of earnings, and "actual and
projected pain and suffering and emotional distress . . . not to exceed $250,000."[5]  § 15(a).
"Compensation awarded under the Program may not include . . . compensation for other than the
health, education, or welfare of the person who suffered the vaccine-related injury with respect to
which the compensation is paid."  § 15(d)(2).  Payment of these elements of compensation is
limited by § 15(g) of the Vaccine Act, which provides that

> Payment of compensation under the Program shall not be made for any item or
> service to the extent that payment has been made, or can reasonably be expected
> to be made, with respect to such item or service (1) under any State compensation
> program, under an insurance policy, or under any Federal or State health benefits
> program . . . , or (2) by an entity which provides health services on a prepaid
> basis.

§ 15(g).  Thus, compensation awarded pursuant to § 15(a) is subject to the constraints of § 15(g),
which establishes that the Program is a secondary payer for the enumerated sources of funds,
with the exception of Medicaid.  See id.

"Looking to the language of § 15(g), Congress specifically enumerated the types of
funding sources that would offset compensation awards."  Heinzelman v. Sec'y of Health &
Hum. Servs., 681 F.3d 1374, 1382 (Fed. Cir. 2012).

It is a well-settled principle of statutory interpretation that "[w]hen . . . the terms of a

---

[5] Petitioner is not making a claim for unreimbursed expenses or loss of earnings.  Joint Status
Rept., filed July 8, 2020 (ECF No. 186).

statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." <u>Glaxo Operations UK Ltd. v. Quigg</u>, 894 F.2d 392, 395 (Fed. Cir. 1990); <u>see also</u> <u>Hellebrand v. Sec'y of Health & Hum. Servs.</u>, 999 F.2d 1565, 1569 (Fed. Cir. 1993) (quoting <u>Brookside Veneers, Ltd. v. United States</u>, 847 F.2d 786, 788 (Fed. Cir. 1988) ("It is a general rule of statutory construction that where Congress has clearly stated its intent in the language of a statute, a court should not inquire further."), <u>cert. denied</u>, 488 U.S. 943). A judicial officer should not add words to a statute, but should instead "interpret[] the statute as it was enacted." <u>Beck v. Sec'y of Health & Hum. Servs.</u>, 924 F.2d 1029, 1034 (Fed. Cir. 1991).

## VI.   ANALYSIS

For the following reasons, the undersigned finds the Vaccine Act is a secondary payer as to the Settlement Agreement and that petitioner's award of compensation is subject to a set-off as to any payment made pursuant to an "insurance policy."

First, because petitioner alleged, and the undersigned found that B.R. died as a result of the vaccines she received, the proper petitioner is "the legal representative of any person who died as a result of the administration of a vaccine." § 11(b)(1)(A). Petitioner filed letters of administration verifying that she was appointed as the administrator of the estate of B.R. <u>See</u> Pet. Ex. 45. Thus, the undersigned finds that Stephanie Roscoe, as administrator of the estate of B.R., is the proper party under the Vaccine Act, as the "the legal representative of [B.R.] who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table." § 11(b)(1)(A).

However, the undersigned disagrees with the petitioner's argument that the outcome of this ruling turns on whether any of the settlement proceeds were paid to B.R.'s Estate or whether the Estate was ever funded. The express terms of the Settlement Agreement provide that the monetary award paid by the Insurers to the Releasors was, "$[. . .] payable to Stephanie Michelle Roscoe and Frederick Parks, as Parents and Natural Guardians of [B.R.], and as Administrator of the Estate of [B.R.] (Stephanie Michelle Roscoe), and [. . .], their attorneys." Resp. Ex. DD at 6-7. Stephanie Michelle Roscoe signed the Settlement Agreement "Individually, and as Parent and Natural Guardian of [B.R.], deceased, and as the Administrator of the Estate of [B.R.], deceased." <u>Id.</u> at 11. The plain language of the Settlement Agreement provides that payment was made to the administrator of B.R.'s Estate. Therefore, the payment under the Settlement Agreement was not paid only to B.R.'s parents individually.

Additionally, the Settlement Agreement states that payment was for a release of all claims for "injuries to person, . . . wrongful death, pain and suffering, mental and/or emotional anguish, . . . medical, hospital, and/or other expenses of any kind whatsoever, loss of wages, loss of income and/or compensation, loss of consortium or services of whatsoever kind in nature, and/or other claims for monetary relief against Releasees." Resp. Ex. DD at 2-3. These items of damages are the same damages the Estate is entitled to under the Vaccine Act. Compensation under the Vaccine Act includes "an award of $250,000 for the estate of the deceased" in "a vaccine-related death," actual and anticipated loss of earnings, and "actual and projected pain and suffering and emotional distress . . . not to exceed $250,000." § 15(a).

Section 15(g) of the Vaccine Act states that "[p]ayment of compensation under the Program shall not be made for any item or service to the extent that payment has been made . . . with respect to such item or service . . . under an insurance policy." Pursuant to the Settlement Agreement, the items of compensation for which payment have been made include the death award of $250,000, any claim for loss of income, and an award for pain and suffering which is capped at $250,000. These are the very items for which payment have been made here by the insurers.

"The plain language of the Vaccine Act reflects that the Program is a secondary payer to any insurance policy. It does not limit offsets to health insurance policies." Helman, 2014 WL 3589564, at *2. The fact that the insurance policy here may be a hospital liability insurance policy does not change the language and intent of the Vaccine Act, which clearly intended the Program to be a secondary payor to an insurance policy. However, the Settlement Agreement does not specify whether some or all of the payment was paid by an insurance policy. The two relevant entities are [. . .] and [. . .]. There may be one or more insurance policies that made payments pursuant to the Settlement Agreement. Or, there may be one insurance policy, with excess coverage provided by a self-insured entity, which may or may not constitute an "insurance policy."

In summary, $[. . .] was made payable in part to "Administrator of the Estate of [B.R.] (Stephanie Michelle Roscoe)." Resp. Ex. DD at 6. The Settlement Agreement was executed by Stephanie Michelle Roscoe "as the Administrator of the Estate of [B.R.], deceased." Id. at 11. [. . .] and [. . .] were identified "as the primary liability insurers" in the Settlement Agreement, and agreed to make the above-mentioned payment. Id. at 1, 6. The amount paid by an insurance policy or policies is not yet known, and further discovery is required to answer this question. However, the award of damages sought in the underlying civil action as enumerated in the Settlement Agreement mirrors the items of damages allowable in a Vaccine Program case. This evidence establishes that payments were made "under an insurance policy" as contemplated in Vaccine Act § 15(g). Therefore, the undersigned finds § 15(g) of the Vaccine Act is applicable and requires a set-off as to the amounts paid by an "insurance policy."

## VII.   CONCLUSION

A status conference has been scheduled for May 10, 2022 at 1:00 PM (EST) to discuss a plan for the parties to pursue discovery to obtain information as to the insurance policy or policies that made payments pursuant to the Settlement Agreement, as well as to discuss resolution of petitioner's damages and effect of the set-off consistent with this Ruling.

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master