# In the United States Court of Federal Claims

No. 11-206 V
(Filed Under Seal: February 3, 2023)
(Unsealed Opinion Filed: March 6, 2023)[1]

*******************************************

| | | |
|---|---|---|
| **STEPHANIE ROSCOE**, as Representative of the Estate of B.R., deceased, | * * * * | National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 *et seq.* (2006); Motion for Review; 42 U.S.C. § 300aa-15(g); Offset; Burden of Proof. |
| Petitioner, | * * | |
| v. | * * | |
| **THE UNITED STATES**, | * * | |
| Respondent. | * * * | |

**************************************************

*Richard Gage*, Richard Gage, P.C., Cheyenne, Wyoming, for Petitioner.

*Kyle E. Pozza*, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *C. Salvatore D'Alessio*, Director, and *Heather L. Pearlman*, Deputy Director, *Alexis B. Babcock*, Assistant Director, for Respondent.

## OPINION

On April 4, 2011, Stephanie Roscoe ("Petitioner"), on behalf of B.R., a minor, filed a petition for compensation under the National Child Vaccine Injury Compensation Act of 1986, 42 U.S.C. §§ 300aa-1 *et seq.* (2006) ("Vaccine Act"). The petition alleged that B.R., born on September 4, 1997, received hepatitis A ("Hep A"), tetanus, diphtheria, acellular-pertussis ("Tdap"), meningococcal ("Menactra"), and human papillomavirus ("HPV") vaccines on March 31, 2009, and thereafter suffered an infection in her hip that was caused by the vaccinations, leading to sepsis and death. Compensation in this case was awarded to Petitioner pursuant to the Vaccine Act.

---

[1] The Court issued this opinion under seal on February 3, 2023, and the Court gave the parties fourteen days to propose the redaction of competition-sensitive, proprietary, confidential, or otherwise protected information. Petitioner filed a Motion for Redaction on February 17, 2023 (ECF No. 266), and the Court granted Petitioner's motion (ECF No. 267). Accordingly, the Court issues the opinion unsealed with Petitioner's proposed redactions.

The case is now before the Court on Respondent's Motion for Review of the Special Master's Decision on Damages. *Roscoe v. HHS*, No. 11-206V, 2023 WL 405024 (Fed. Cl. Spec. Mstr. Jan. 23, 2023).[2] The Special Master's Decision on Damages incorporated two previous rulings including the Special Master's Ruling on Entitlement, *Roscoe v. HHS*, No. 11-206V, 2020 WL 4197298 (Fed. Cl. Spec. Mstr. June 8, 2020), and the Special Master's Ruling on Set-Off, *Roscoe v. HHS*, No. 11-206V, 2022 WL 2294633 (Fed. Cl. Spec. Mstr. May 9, 2022). In her Ruling on Entitlement, the Special Master found that that "[P]etitioner provided preponderant evidence that one or more of the vaccines B.R. received caused her to develop *Streptococcus pyogenes* infection that caused her death . . . ." *Roscoe*, 2020 WL 4197298 at *1. In her Ruling on Set-Off, the Special Master determined that Petitioner's vaccine award was subject to an offset pursuant to § 15(g) of the Vaccine Act, to the extent that any of the settlement proceeds were paid "under an insurance policy." *Roscoe*, 2022 WL 2294633 at * 8. In her final Decision on Damages, the Special Master found that a prior civil settlement paid by [          ] Indemnity, LLC [Indemnity, LLC] was not an offset under Section 15(g) of the Vaccine Act "because there is not preponderant evidence that the settlement proceeds were paid 'under an insurance policy.'" *Roscoe*, 2023 WL 4197298 at *10.

In its motion, Respondent does not dispute that the vaccine was the cause of B.R.'s death or that Petitioner is entitled to damages under the Act. Instead, Respondent argues that the Special Master erred by placing the burden on Respondent to provide evidence relating to the terms of a previous settlement agreement as a potential offset under 42 U.S.C. § 300aa-15(g). Additionally, Respondent claims that the Special Master's finding that there was not preponderant evidence of payments made pursuant to an insurance policy was arbitrary and capricious.

The issue before this court is whether the Special Master properly allocated the burdens of proof when determining offset and whether she rationally found that there was not preponderant evidence of payments made pursuant to an insurance policy.

For the reasons set forth below, the Court **DENIES** Respondent's Motion for Review.

**I.    History**

Following a hearing on January 8, 2020, where each side presented expert testimony, as well as subsequent briefing by the parties, on June 8, 2020, the Special Master issued a "Ruling on Entitlement" and held that "petitioner provided preponderant evidence that one or more of the vaccines B.R. received caused her to develop *Streptococcus pyogenes* infection that caused her death . . . ." *Roscoe*, 2020 WL 4197298 at *1.

In an order on May 4, 2021, the Special Master directed the parties to brief the issue of whether there should be any set-off based on the settlement Petitioner received as a result of her

---

[2] The Special Master's Decision on Damages was originally filed on November 14, 2022, but the decision was refiled in redacted form on January 23, 2023.

civil action in the State Court of Georgia. ECF No. 205 at 2. The Special Master also directed Respondent to file the non-redacted version of the settlement agreement.[3] *Id.*

Then the Special Master issued her Ruling on Set-Off, finding Petitioner's vaccine award was subject to an offset pursuant to 42 U.S.C. § 300aa-15(g) of the Vaccine Act to the extent that any of the settlement proceeds were paid "under an insurance policy." *Roscoe*, 2022 WL 2294633 at * 8. The Special Master concluded that from her review of the settlement agreement, it was not clear what money was paid under an insurance policy or policies. *Id.* The Special Master stated that the "recitals" identified Lexington Insurance Company and Indemnity, LLC "as the primary liability insurers of the Releasees for the incident in question." *Id.* She further noted that the agreement did not identify the specific insurance policy or policies which made the settlement payments, and the agreement did not describe whether any of the settlement payment was made by a self-insured entity, or pursuant to any other arrangement other than an insurance policy. *Id.* The Special Master directed Respondent to subpoena this information from those most knowledgeable. *Id.*

Thereafter, Respondent filed the subpoena responses containing discovery information related to payment under the settlement agreement. Respondent filed a copy of a check which reflected that the lump sum payment of the settlement proceeds were paid by Indemnity, LLC. ECF No. 251-2 at 14. Indemnity, LLC, did not respond directly to the subpoena, however, after additional research, Respondent filed documentation that Indemnity, LLC, no longer exists, as it merged into [        ] Indemnity, LTD [Indemnity, LTD]. ECF No. 251; ECF No. 253-1. Although no financial records of Indemnity, LLC were filed, Respondent filed Indemnity, LTD's financial statements. ECF No. 253-2. The financial statements provided background information that Indemnity, LTD "continued the business of [Indemnity, LLC] to provide insurance coverage to the Parent." *Id.* at 9. Further, the financial statements noted that Indemnity, LLC was organized in 2006 "as a single parent captive . . . to insure the risks of the Parent." *Id.* While the financial statements include a detailed explanation of how the new entity provided insurance coverage to the Parent, there was no information about how the prior entity, Indemnity, LLC, provided insurance coverage to the Parent from 2006 until it was dissolved in 2019.

After Respondent filed the subpoena responses, both parties filed a memorandum on damages and offset. The Special Master then issued her Decision on Damages finding that the award is not subject to an offset because there is not preponderant evidence that the settlement proceeds were paid "under an insurance policy." *Roscoe*, 2023 WL 405024 at *10. The Special Master further found that Petitioner is entitled to compensation in the amount of $500,000.00, consisting of an award of $250,000.00 for pain and suffering and $250,000.00 for the death benefit. *Id.*

---

[3] Given the confidential nature of the settlement agreement, Respondent was directed to subpoena Petitioner's attorney in the civil action and file the settlement agreement. ECF No. 197 at 2-3.

## II. Civil Action Complaint and Settlement Agreement

Petitioner's State Court civil action was brought by Stephanie Rosco and [          ] (Plaintiffs) as the parents of and administrators of the estate of their deceased daughter, B.R. ECF No. 49 at 3. They sued seven defendants alleging medical negligence and wrongful death of B.R. *Id.* In the complaint, the ad damnum clause requested "[t]hat they recover on behalf of [B.R.'s] estate for her injuries and damages" and "[t]hat they recover the full value of [B.R.'s] life under the wrongful death statute." *Id.* at 3, 17.

The plaintiffs and certain defendants in the civil action entered into a settlement agreement. Under the terms of the settlement agreement, Ms. Roscoe and [          ], as the parents of and administrators of the estate of their deceased daughter, B.R., were identified as the "Releasors." ECF No. 227-1 at 2. The "Releasees" were certain defendants in the civil action. *Id.* The "recitals" in the settlement agreement stated that the "Complaint arose out of certain alleged negligent acts or omissions by Releasees and the other named Defendants (hereinafter "the Incident"), and which [Releasors] allege caused the death of [B.R.]." *Id.*

Two entities, Lexington Insurance Company ("Insurance Company") and Indemnity, LLC were identified in the settlement agreement as "the primary liability insurers of the Releasees." *Id.* The Settlement Agreement did not identify any insurance policy or policies that would pay out the proceeds. The settlement proceeds included a lump sum payment as well as structured settlements to fund annuities or a "stream of future periodic payments" for both Ms. Roscoe and [          ]. *Id.* at 8.

The "Releasors" represented that one or both of them were "duly appointed administrator(s) of the estate of [B.R.]." *Id.* at 9. Petitioner, Stephanie Michelle Roscoe, signed the settlement agreement "Individually, and as Parent and Natural Guardian of [B.R.], deceased, and as the Administrator of the Estate of [B.R.], deceased." *Id.* at 12.

## III. Standard of Review

Pursuant to 42 U.S.C. § 300aa-12(e)(2)(B), this Court must uphold any findings of fact or conclusions of law of the Special Master unless the findings are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). With respect to findings of fact, the Special Master has broad discretion to weigh expert evidence and make factual determinations. *See, e.g.*, *Bradley v. Sec'y of HHS*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). "If the special master has considered the relevant evidence of the record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y of HHS*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). With respect to questions of law, legal rulings are reviewed de novo under the "not in accordance with law" standard. *See, e.g., Moberly v Sec'y of HHS*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); *Munn v. Sec'y of HHS*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

Respondent's first argument that the Special Master improperly allocated the burdens of proof in accordance with the Vaccine Act is a question of law. The allocation of the burdens of proof under the Vaccine Act is a legal issue subject to de novo review. Respondent's second argument concerning the Special Master's finding that there was not preponderant evidence of

4

payments made pursuant to an insurance policy is a question of fact and the Court will defer to the Special Master's factual determinations so long as they are not arbitrary and capricious.

### IV. The Special Master Properly Allocated the Burdens of Proof in Accordance with the Vaccine Act

Respondent claims that the Special Master erred by placing the burden on Respondent to provide evidence relating to the terms of the civil settlement and the insurance policy as a potential offset under 42 U.S.C. § 300aa-15(g), ultimately concluding that there was insufficient evidence of payment made pursuant to an insurance policy in this matter. Respondent contends that the Special Master should have given Petitioner the burden to establish that the compensation claimed is not a "payment [that] has been made . . . under an insurance policy" and presumed that the settlement is considered an offset under the statute absent evidence establishing otherwise. 42 U.S.C. § 300aa-15(g).

To support its argument, Respondent points to a statute that concerns a petitioner's burden to prove its entitlement to compensation under the Vaccine Act. Respondent contends that within its petition for compensation, Petitioner has the burden to provide "an affidavit, and supporting documentation" demonstrating that Petitioner did not previously collect a settlement of a civil action for "damages for such vaccine-related injury or death."[4] 42 U.S.C. § 300aa-11(c)(1)(E). The statute cited, however, is not relevant here because the statute concerns Petitioner's burden of proof regarding entitlement[5] rather than an offset to award, and Respondent states in its motion for review, "[R]espondent has elected not to also seek review of the underlying entitlement decision." ECF No. 257 at 7.[6] Instead, Respondent's motion asks

---

[4] Respondent cites a statute that states "compensation shall be awarded under the Program . . . if the special master finds that petitioner has demonstrated by a preponderance of the evidence the matters required in the petition by section 300aa–11(c)(1) of this title . . . ." 42 U.S.C. § 300aa-13(a)(1). Respondent refers to another statute which states that a petition for compensation under the Vaccine Act shall contain "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury or who died . . . has not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death . . . ." 42 U.S.C. § 300aa-11(c)(1)(E).

[5] During the entitlement phase, a petitioner has the burden of proof to satisfy his or her prima facie case of causation. *See* 42 U.S.C. § 300aa-14; 42 U.S.C. § 300aa-11(c)(1)(C)(i); *see also Walther v. Sec'y of HHS*, 485 F.3d 1146, 1149 (Fed. Cir. 2007). After a petitioner proves his or her prima facie case of causation, the burden shifts to the respondent to prove that a "factor unrelated" to the vaccination actually caused the injury. 42 U.S.C. §§ 300aa-13(a)(1)(A), (B); *see also Pafford v. Sec'y of HHS*, 451 F.3d 1352, 1355 (Fed. Cir. 2006).

[6] The Federal Circuit explains that § 15(a) of the Vaccine Act, the entitlement provision, has a different function than the offset provision at issue here under § 15(g). *See Heinzelman*, 681 F.3d at *1379 ("Looking at the overall structure of the Vaccine Act . . . § 15(a) gives compensation while § 15(g) provides for offsets where compensation is made via one of the enumerated programs.").

this Court to review the Special Master's Decision on Damages concerning the burden of proof for a potential offset to Petitioner's entitlement award. Thus, the Court will review the offset provision at issue, § 300aa-15(g) to determine the relevant burden of proof.

In its response, Petitioner argues that the Special Master properly attributed the burden of proof to Respondent because she reasonably interpreted the application of an offset to Petitioner's award pursuant to § 300aa-15(g) as Respondent's affirmative defense to paying full compensation due under the Vaccine Act.[7] Further, Petitioner contends that because Congress did not assign a burden of proof under § 300aa-15(g), the Special Master reasonably interpreted the statute to place the burden on the party benefitting from the provision.[8]

The Court agrees with Petitioner that the Special Master, in concluding that Petitioner's award is not subject to an offset because there is no evidence that any payment of the underlying civil action settlement was made "under an insurance policy," properly interpreted § 300aa-15(g) of the Vaccine Act to place an affirmative burden on Respondent. The Special Master's finding in this matter was as follows:

> The documents obtained via an internet search by Respondent's counsel show that Indemnity, LLC was organized in 2006, as a "single parent captive under the captive insurance laws . . . to insure the risks of its Parent." Resp. Ex. HH at 9. But no evidence has been filed to establish how Indemnity, LLC insured those risks in 2013 when it paid the settlement proceeds at issue.
>
> . . . .
>
> No evidence has been filed to show Indemnity, LLC made the payment at issue "under an insurance policy." While the purpose of Indemnity, LLC may have been to "insure the risks of its Parent," this alone is not evidence that the payment at issue was made "under an insurance policy."
>
> . . . .

---

[7] Petitioner further contends that after the Special Master determined that Petitioner is entitled to an award under the Vaccine Act, Respondent invoked § 300aa-15(g) as a defense to paying the award in full, and the Special Master properly directed Respondent to subpoena the information it might need to support its defense.

[8] Petitioner also argues that Respondent's argument is moot because Petitioner presented evidence that any payment made in the Georgia civil action was not paid to the Estate of B.R. for B.R.'s pain and suffering and thus could not be an offset to damages under the Vaccine Act. Because Respondent's motion does not dispute the Special Master's ruling that Petitioner's vaccine award is subject to an offset pursuant to § 300aa-15(g) of the Vaccine Act, to the extent that any of the settlement proceeds were paid "under an insurance policy," ECF No. 245 at 10, this Court does not need to consider this issue. Finally, Petitioner contends that Respondent's argument is waived. Because of the Court's holding below, it is unnecessary to consider this argument.

> For these reasons, the undersigned finds there is not preponderant evidence that the settlement proceeds at issue were paid "under an insurance policy," and thus, the Petitioner's award of compensation is not subject to a set-off pursuant to §15(g) of the Vaccine Act.

*Roscoe*, 2023 WL 405024 at *10. The Special Master indicated, in this finding, that she interpreted the statute to place the burden on Respondent to prove that payment was made to Petitioner "under an insurance policy." This interpretation views "[§ 300aa-15(g)] as an affirmative defense to compensation instead of an obstacle to award, requiring that the respondent bear the burden of establishing" that such a payment was made to the petitioner pursuant to an insurance policy "to serve as the primary source of payment." *McClendon v. Secretary of the Dep't of Health & Human Servs.*, 28 Fed. Cl. 1, *9 (1993), *aff'd,* 41 F.3d 1521 (Fed. Cir. 1994).

The Special Master's interpretation of § 300aa-15(g) is not contrary to precedent, as the Federal Circuit indicates a similar interpretation of this provision. *See Heinzelman v. Sec'y of HHS*, 681 F.3d 1374, *1380-83 (Fed. Cir. 2012) (placing the burden on the government to prove its defense that plaintiff's award was subject to an offset under § 300aa-15(g)). Further, this interpretation is not contrary to § 300aa-15(g) as the statute does not suggest that a petitioner should bear the burden of disproving the application of the offset provision. In pertinent part, the offset provision provides:

> Program not primarily liable
> Payment of compensation under the Program shall not be made for any item or service to the extent that payment has been made, or can reasonably be expected to be made, with respect to such item or service (1) . . . under an insurance policy.

42 U.S.C. § 300aa-15(g). Although this provision is silent as to allocating the burden, it clearly indicates a limitation of Respondent's liability. The more natural reading is for Respondent, the party benefitting from the provision, to have the burden to prove that it is not primarily liable under the terms of § 300aa-15(g). *See* 5 USCA § 556(d) (APA) ("Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof."). A petitioner does not bear the burden to disprove his or her own case.

Finally, legislative history is not opposed to the Special Master's interpretation of this provision. The Special Master correctly notes that "Congress contemplated [] special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims." *Roscoe*, 2023 WL 405024 at *8 (citing *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993)). Further, Congress underscored that it "intended a quick, flexible, and streamline system. [A system] call[ing] for a compensation procedure that administered awards quickly, easily, and with certainty and generosity." H.R. Cong. Rep. No. 99-908, 99th Cong., 1st Sess. 3 (1986), reprinted in 1986 U.S. Code Cong. & Admin. News 6344. Thus, the intent of the Vaccine Program cannot be to make recovery of damages harder for petitioners by placing the burden of proving offset on petitioners in this Program whereas, in other contexts, courts have viewed a claim for offsets as a defendant's affirmative defense. *See* H.R. Rep. No. 908, 99th Cong., 2d Sess. 3 (1986) (The purpose of the Vaccine Act is "to

establish a Federal 'no-fault' compensation program[.]"); *see, e.g.*, *Suntrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 809 F. Supp. 2d 485, 490 (E.D. Va. 2011) ("The rights of recoupment-or "set-off," as it is sometimes called-does not factor into the plaintiff's burden on damages. Rather, the burden of proving a set-off falls on the defendant who asserts it."); *Regency Commc'n v. Cleartel Commc'n, Inc.*, 304 F. Supp. 2d 1, 6-7 (D.D.C. 2004) (holding that setoff is either an affirmative defense or a compulsory counterclaim to be affirmatively pled by the defendant); *Lane Constr. Corp. v. Skanska USA Civil Se., Inc.*, 2022 U.S. Dist. LEXIS 141859, *13 (M.D. Fla., Apr. 12, 2022) ("The record is clear that Plaintiff was afforded a sufficient opportunity to oppose Defendant's set off defense.").

Accordingly, the Court holds that the Special Master did not err in viewing § 300aa-15(g) as an affirmative defense to compensation instead of an obstacle to award, and, therefore, the Special Master properly allocated the burdens of proof in accordance with the Vaccine Act.

V. **The Special Master's Finding Regarding Lack of Evidence of an Insurance Policy was Rational**

Respondent contends that the Special Master's finding that there was not preponderant evidence of payments made pursuant to an insurance policy was arbitrary and capricious. Instead, Respondent argues, the Special Master should have considered the civil settlement to be an offset to award because Respondent provided more than sufficient evidence to document that the settlement was paid by an insurance company.  As support, Respondent cites to the settlement agreement, which identified two entities, Lexington Insurance Company and Indemnity, LLC as "the primary liability insurers of the Releasees."  Further, Respondent refers to a copy of a signed check from Indemnity, LLC, for [          ] made payable to Petitioners, concluding that the Special Master should have found that Indemnity, LLC is an insurance company because it is clearly identified as such in the settlement agreement.

In its response, Petitioner argues that the Special Master's finding that the Petitioner's award of compensation is not subject to an offset pursuant to § 300aa-15(g) is rational because there is no evidence that an insurance policy existed and any assumption to the contrary would be speculative.  Further, Petitioner contends that the Special Master correctly interpreted the statute to be unambiguous, and as such the statute's terms "under an insurance policy" cannot be expanded to include an indemnification agreement or anything other than an insurance policy.[9]

---

[9] Insurance is defined as a "contractual relationship under which an insured pays a premium of money to an insurer, and the insurer promises either to indemnify the insured for losses the insured suffers from certain specified contingencies or perils . . . . The contract of insurance is manifest in the insurance policy." *Insurance*, The Wolters Kluwer Bouvier Law Dictionary Desk Edition (Stephen Michael Sheppard, ed., 2012).  Indemnity is defined as "a payment made by an indemnitor to an indemnitee compensating the indemnitee for any loss suffered as the result of an accident, incident, or event that would cause the indemnitee a loss were it not for the indemnity." *Indemnity*, The Wolters Kluwer Bouvier Law Dictionary Desk Edition (Stephen Michael Sheppard, ed., 2012).  Further, an indemnity agreement is defined as "a contract by which the indemnitor promises to hold the indemnitee harmless from loss or damage of some kind specified in the agreement, irrespective of the liability of any third person for that loss or damage." *Id.*

This Court agrees with Petitioner that the Special Master's finding that there was not preponderant evidence of payments made pursuant to an insurance policy was not arbitrary and capricious. *See Hines*, 940 F2.d at 1528. The relevant portions of the Special Master's findings are included below:

> Both the settlement check and the annuity documents identify the payor/purchaser as Indemnity, LLC. *Id.* The documents obtained via an internet search by Respondent's counsel show that Indemnity, LLC was organized in 2006, as a "single parent captive under the captive insurance laws . . . to insure the risks of its Parent." Resp. Ex. HH at 9. But no evidence has been filed to establish how Indemnity, LLC insured those risks in 2013 when it paid the settlement proceeds at issue. Indemnity, LLC may have underwritten a policy of insurance that paid some or all of the settlement proceeds, but without proof that an "insurance policy" existed and without an "insurance policy" in evidence, it would be speculative to make any such assumption.
>
> If Congress had wanted the Vaccine Program to be a secondary payer as to payments made by indemnity companies, it could have included such language in the statute. But it did not. The language of § 15(g) specifically enumerates the types of funding sources that may offset compensation awards. These include payments made "(1) under any State compensation program, under an insurance policy, or under any Federal or State health benefits program . . . , or (2) by an entity which provides health services on a prepaid basis." Payment "by an indemnity company" is not included. Payments by any source not expressly identified in the statute may not be used to offset awards of compensation. The statute provides that any sources not expressly identified may not be used to offset awards. Thus, it appears that Congress intended the secondary payor provision to be very narrowly construed.
>
> . . . .
>
> Finally, the terms of this provision of the statute are unambiguous, and therefore, the undersigned may not add words to the statute or interpret the words to expand the reach of a statute.

*Roscoe*, 2023 WL 405024 at *9-10. The Special Master found that § 300aa-15(g) clearly indicates the types of funding sources that may offset awards, and therefore, she concluded that payments by any source not expressly identified in the statute may not be used to offset awards of compensation. Thus, based on the terms of the statute, she rationally found that any assumption that the payment made by Indemnity, LLC was pursuant to an insurance policy would be speculative without evidence that an insurance policy exists. Looking to the language of § 300aa-15(g), Congress specifically enumerated the types of funding sources that would offset compensation awards. Without evidence of an insurance policy, the Special Master rationally found that the payment could have been made through another source not expressly identified in the statute, and thus could be a source which should not be used to offset awards.

The Federal Circuit has held that "Congress has accorded [special masters] the status of expert entitling them to the special statutory deference in fact-finding normally reserved for specialized agencies." *Munn*, 970 F.2d at 871. Thus, the Court's obligation in reviewing the Special Master's findings is to determine if her decision was reasonable. *See McClendon,* 28 Fed. Cl. at *8. Because the Special Master considered the relevant evidence presented regarding the civil settlement agreement and articulated a rational basis for her decision, this Court holds that her findings are not arbitrary and capricious.

## VI. Conclusion

For the reasons set forth above, the Court holds that the Special Master properly allocated the burdens of proof and rationally found that there was not preponderant evidence of payments made pursuant to an insurance policy. Respondent's Motion for Review is **DENIED**. The Clerk is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge